**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEFFREY C.,

                         Plaintiff,

    - v -                                        Civ. No. 6:18-CV-505
                                                           (FJS/DJS)

NANCY A. BERRYHILL, *Acting Comm'r of*
*Soc. Sec.*,

                        Defendant.

**APPEARANCES:**                                  **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ         PETER W. ANTONOWICZ,
Counsel for Plaintiff                                 ESQ.
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.               SERGEI ADEN, ESQ.
OFFICE OF REG'L GENERAL COUNSEL
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION and ORDER[1]

    Currently before the Court, in this Social Security action filed by Jeffrey C. against

the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are

---

[1] Upon Plaintiff's declination of consent to a Magistrate Judge, this matter has been referred to the undersigned for a Report-Recommendation pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 72. *See* Dkt. No. 4 & General Order 18.

Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 12 & 13. For the reasons set forth below, Plaintiff's Motion is **denied** and Defendant's Motion is **granted**. The Commissioner's decision denying Plaintiff disability benefits is **affirmed**, and Plaintiff's Complaint is **dismissed**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on June 7, 1963. Dkt. No. 9, Admin. Tr. ("Tr."), p. 206. Plaintiff reported graduating from high school in special education classes. Tr. at p. 32. He has past work experience on an assembly line and as a machine operator at a milk plant, and as a cook at a restaurant. Tr. at p. 211. Plaintiff alleges disability due to hearing loss, depression, other mental issues, and left arm surgery aftermath. Tr. at p. 210.

### B. Procedural History

Plaintiff filed for Disability Insurance Benefits and Supplemental Security Income on November 12, 2015, alleging disability beginning on December 13, 2013. Tr. at pp. 85 & 206. Plaintiff was denied benefits, and on Plaintiff's request, a hearing was held on January 4, 2017; the hearing was adjourned so that Plaintiff could seek counsel. Tr. at pp. 57-62 & 89-95. The hearing was then held on May 24, 2017 before Administrative Law Judge ("ALJ") Kenneth Theurer, at which Plaintiff was represented and testified. Tr. at pp. 25-56. On September 8, 2017, the ALJ issued a written determination finding Plaintiff not disabled. Tr. at pp. 7-24. Plaintiff appealed the determination, and the Appeals Council denied Plaintiff's request for review, making the ALJ's determination

the final decision of the Commissioner. Tr. at pp. 1-6. Plaintiff then commenced this action appealing the determination on April 26, 2018. Dkt. No. 1.

## C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. Tr. at p. 12. The ALJ next found Plaintiff did not engage in substantial gainful activity since December 13, 2013, the alleged onset date. *Id.* The ALJ found that Plaintiff had the following severe impairments: hearing loss, depression, anxiety, PTSD, obsessive-compulsive disorder and a learning disorder. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at p. 13. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except:

> He should not work in a noise environment greater than moderate, as defined by the Dictionary of Occupational Titles, but he retains the ability to hear and understand simple, oral instructions and to communicate simple information. The claimant is able to read at a GED level of two. He can understand and follow simple instructions and directions; perform simple tasks with or without supervision; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and relate to and interact appropriately with others (supervisors, coworkers and the public) to the extent necessary to carry out simple tasks. He is limited to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes.

3

Tr. at p. 15.  Next, the ALJ determined that Plaintiff was unable to perform any past relevant work.  Tr. at p. 18.  The ALJ found that Plaintiff was born on June 7, 1963 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date, has at least a high school education and is able to communicate in English.  Tr. at p. 18.  The ALJ found that transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.  *Id.*  The ALJ then determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and that Plaintiff was not under a disability from December 13, 2013, through the date of the ALJ's decision.  Tr. at pp. 18-19.

## D.  The Parties' Briefings on Their Cross-Motions

In his brief, Plaintiff contends that the ALJ failed to give appropriate weight to the opinion evidence.  Dkt. No. 12, Pl.'s Mem. of Law, pp. 10-12 & 14-15.  Plaintiff contends that the ALJ erred in not giving the opinion of his treating physician controlling weight, that he should not have relied on the opinions of non-treating consultative sources, and that the ALJ should have given his treating nurse practitioner's opinion greater weight.  *Id.* at pp. 11-12 & 14-15.  He next contends that it was inappropriate for the ALJ to obtain a medical expert opinion because there was sufficient evidence in the record.  *Id.* at pp. 12-13.  Finally, Plaintiff contends that the ALJ should have considered whether the record supported disability as of a date later than the alleged onset date, in particular the date that he began treatment with his psychiatric provider.  *Id.* at pp. 15-16.

In response, Defendant contends that the ALJ reasonably weighed the evidence, and that it was proper for the opinions of nonexamining sources to override those of treating sources. Dkt. No. 13, Def.'s Mem. of Law, pp. 12-20. In addition, Defendant contends that ALJs have discretion to seek additional evidence, including an opinion from a medical expert, and it was not error for the ALJ to do so. *Id.* at pp. 16-17. Finally, Defendant contends that the ALJ necessarily evaluated Plaintiff's disability status over the entire period from his alleged onset date to the date of decision, and that Plaintiff fails to provide any argument explaining how a later alleged onset date would change the analysis regarding Plaintiff's functioning. *Id.* at pp. 20-22.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere

scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.  Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential

6

evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

#### A. The Weight Afforded Medical Opinions

Plaintiff first contends that the ALJ failed to properly apply the treating physician rule. Pl.'s Mem. of Law at pp. 10-12. Plaintiff argues that the opinions to which the ALJ afforded weight, those of Dr. Ganesh and Dr. Kahn, should have been given less weight because they were consultative sources who had no longitudinal treatment with Plaintiff,

7

and their opinions are not well supported by the record. *Id.* at pp. 12 & 14. Plaintiff contends that the ALJ failed to consider the entire record, emphasizing notes from a non-specialist primary care physician to the exclusion of the balance of the record, and points out that Dr. Giaccio treated Plaintiff, while the medical expert and consultative examiners did not treat Plaintiff at all. *Id.* at p. 14.

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2) & 404.1527(c)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. §§ 416.927(d)(1) & 404.1527(d)(1) (Commissioner provides the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. §§ 416.927(c)(2) & 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142

8

F.3d 75, 80-81 (2d Cir. 1998). "In order to override the opinion of the treating physician . . . the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. §§ 416.927(c)(2) & 404.1527(c)(2). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion,'" giving "good reasons for not crediting the opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d 117, at 129-30 (2d Cir. 2008)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013)); *Colvin on behalf of G.R.K. v. Colvin*, 2017 WL 1167292, at *6 (N.D.N.Y. Mar. 28, 2017) (quoting *Atwater v. Astrue*, 512 Fed. Appx. at 70) (collecting cases) ("Although an explicit and 'slavish recitation of each and every factor' is not required, 'the ALJ's reasoning and adherence to the regulation [must be] clear.'").

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these

9

consultants are qualified experts in the field of social security disability. 20 C.F.R. § 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

The ALJ has the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (same). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "[I]t is not the function of the reviewing court to reweigh the evidence." *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. Aug. 12, 1993) (citing *Carroll v. Sec. of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

In his decision, the ALJ explained that he gave the opinion of Dr. Giaccio "little weight." Tr. at p. 17. The ALJ acknowledged that Dr. Giaccio is a treating source, and considered the length of treatment, noting his relatively short treatment history with the

10

claimant; he also determined that the opinion was not consistent with the clinical findings of record, with the consultative examination, which was generally unremarkable, or with the claimant's own statements. Tr. at p. 17. Thus, the ALJ also addressed the amount of medical evidence supporting the opinion and the consistency of the opinion with the remaining medical evidence. The ALJ notes that Dr. Giaccio has "professional expertise," although not specifically noting his specialty. Tr. at p. 17. Dr. Giaccio's expertise in psychiatry and neurology is evident in the record. *See, e.g.*, Tr. at p. 484. While the ALJ may not have provided a "slavish recitation of each and every factor" in 20 C.F.R. §§ 416.927 & 404.1527, his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. Appx. at 70. As such, the Court finds no error in the ALJ's decision not to give Dr. Giaccio's opinion controlling weight.

As to Plaintiff's contention that it was improper for the ALJ to give weight to the opinions of a consultative examiner and a medical expert because they did not treat Plaintiff, Pl.'s Mem. of Law at pp. 12 & 14, the ALJ was entitled to rely on opinions from both examining and non-examining State agency medical consultants. 20 C.F.R. § 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 Fed. Appx. at 487. The ALJ sufficiently explained the reasons why he assigned certain weights to these opinions. The ALJ gave the opinion of Dr. Kahn great weight because she reviewed the entire record, and cited "numerous objective findings" supporting her opinion, and has program and professional expertise. Tr. at p. 16. The ALJ explained that he also gave the opinion of Dr. Ganesh great weight because she had the opportunity to examine the claimant and has professional expertise. Tr. at p. 15. As for Plaintiff's contention that the ALJ failed to

consider the entire record and that the ALJ did not cite sufficient evidence to support his determination, Pl.'s Mem. of Law at p. 14, the ALJ's determination was well reasoned and the Court will not "reweigh the evidence." *Vincent v. Shalala*, 830 F. Supp. at 133. The ALJ's weighing of the various opinions within the record is well supported and he sufficiently explained the bases for assigning those opinions varying weights. *See Bliss v. Colvin*, 2015 WL 457643, at *7 ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such.").

Plaintiff also contends that that ALJ should have given Nurse Practitioner Mary van Lieshout's opinion more weight, because she is the director of the psychiatric clinic, has a long history of treating Plaintiff, and because the amended regulations provide that nurse practitioners are acceptable medical sources for claims filed after March 27, 2017. Pl.'s Mem. of Law at p. 15.

This argument fails. This claim was filed in 2015 and thus is not controlled by the changes to the regulations cited by Plaintiff. The nurse practitioner was thus not an acceptable medical source for purposes of the ALJ's analysis. *Monette v. Colvin*, 654 Fed. Appx. 516, 518 (2d Cir. 2016) (summary order) (rejecting plaintiff's argument that ALJ committed error by attributing more weight to the opinion of the consulting psychologist than to the opinion of his treating nurse practitioner, because "a nurse practitioner is not an 'acceptable medical source' whose opinion is eligible for 'controlling weight' . . . and the weight attributed to [the opinion] was supported by the applicable regulatory factors."); *Barnaby v. Comm'r of Soc. Sec.*, 2018 WL 4522057, at *7 (N.D.N.Y. June 6, 2018) (quoting *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir.

2008)) ("[A]n ALJ is 'free to consider' statements of other sources, such as nurse practitioners, in making her overall assessment; however, 'those opinions do not demand the same deference as those of a treating physician'"). It was thus within the ALJ's discretion to determine what weight to give to Ms. van Lieshout's opinion. The ALJ explained that he gave her opinion "little weight" because the opinion was not consistent with the clinical findings of record, it was not consistent with the consultative examination, it was not consistent with some of Plaintiff's statements, and because she does not have the professional expertise of the medical expert to whom the ALJ gave more weight. Tr. at p. 17. The ALJ sufficiently explained his basis for providing Ms. van Lieshout's opinion little weight, and this argument provides no basis for reversal.

Taken together, the ALJ's evaluation of the medical opinions was consistent with the law and supports his decision.

### B.  The Propriety of Obtaining an Expert Opinion

Plaintiff also contends that Social Security Administration Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-5-34 did not permit the ALJ to obtain an expert opinion in this case, because none of the circumstances provided in that provision are present in this case. Pl.'s Mem. of Law at pp. 12-13. Plaintiff contends that the record had sufficient evidence of Plaintiff's impairments and limitations and it was thus unnecessary to obtain an expert opinion. *Id.*

This argument is without merit. Regardless of the question of whether the HALLEX manual is binding in this matter, *see Dority v. Comm'r of Soc. Sec.*, 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015), this contention fails. First, an ALJ has discretion

13

to call a medical expert to assist with determining the impact of a claimant's impairments. *Beasock v. Colvin*, 2014 WL 421324, at *9 (N.D.N.Y. Feb. 4, 2014) ("Beasock's argument that ALJ Weiss was barred from even obtaining and entertaining evidence from Dr. Goldman is unpersuasive. An administrative law judge has discretion as to when it is necessary to call a medical expert on the nature and severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii) & 416.927(f)(2)(ii). As such, nothing precluded ALJ Weiss from calling upon medical expert testimony.").

Indeed, the regulations provide that it is within the ALJ's discretion whether to call a medical expert. *Van Walkenberg ex rel. B.G. v. Astrue*, 2010 WL 2400455, at *17 (N.D.N.Y. May 27, 2010). In addition, the HALLEX section itself provides that an ALJ has discretion to obtain a medical expert opinion in a number of circumstances, including to "explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record," to "clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing," to "explain[] and assess[] the significance of clinical or laboratory findings in the record that are not clear," or to explain "the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time." SOCIAL SECURITY ADMINISTRATION, HALLEX I-2-5-34 When to Obtain Medical Expert Opinion, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-34.html (last updated Apr. 1, 2016). In addition, HALLEX I-2-5-32 specifically provides that "[t]he need for ME opinion evidence is generally left to the ALJ's discretion." SOCIAL

SECURITY ADMINISTRATION, HALLEX I-2-5-32 Medical Experts – General, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-32.html (last updated Aug. 29, 2014).

It was within the ALJ's discretion to utilize a medical expert, and his decision to do so was not error.

### C. The Alleged Onset Date

Plaintiff also contends that, because the ALJ noted that Dr. Giaccio only began treating Plaintiff on June 21, 2016, the ALJ should have considered whether the record supported a finding of disability as of a later onset date, such as the date that treatment began. Pl.'s Mem. of Law at pp. 15-16.

Initially, Plaintiff does not provide any authority on which he bases his argument that a later onset date should have been considered, and that "[t]he ALJ's summary statement that covered the entire period is insufficient." *Id.*

In this case, the ALJ determined that Plaintiff was not disabled, and so he was not required to determine a disability onset date. "Where an ALJ determines that a claimant is not disabled, [ ] the duty to determine an onset date is obviated." *Staples v. Astrue*, 2012 WL 1355544, at *4 (N.D.N.Y. Apr. 18, 2012) (citing *Baladi v. Barnhart*, 33 Fed. Appx. 562, 564 (2d Cir. 2002)); *see also Small v. Astrue*, 2012 WL 5966580, at *3 n. 5 ("Determination of onset date, however, presupposes a finding of disability") (citing SSR 83-20, 1983 WL 31249, at *1 (1983)). In any event, the ALJ considered other dates, as the opinion "considers the evidence after the onset date, and he finds that [plaintiff] is not disabled 'through the date of []his decision.'" *McGinley v. Berryhill*, 2018 WL 4212037, at *17 (S.D.N.Y. July 30, 2018).

In this case, the ALJ found Plaintiff was not disabled, and for the reasons discussed above, Plaintiff's contentions about the validity of the determination fail. As such, the ALJ was not required to determine any disability onset date.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff benefits be **AFFIRMED**; and it is further

**RECOMMENDED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Date: May 22, 2019
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge